## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JOSHUA EUGENE JONES,

     Petitioner,

   v.                                   Case No. 5:20-cv-439-WFJ-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS, *et al.*,

     Respondents.

_____/

## <u>ORDER DENYING 18 U.S.C. § 2254 PETITION</u>

Before the Court is Petitioner Joshua Eugene Jones' Petition for habeas corpus relief under 28 U.S.C. § 2254 (Doc. 1).  Petitioner is serving a life sentence out of the Fifth Judicial Circuit, in and for Marion County, Florida, for sexual battery upon a person under twelve and capital sexual battery.  Respondents concede that the petition is timely.  Upon review of the record, Petition, Response (Doc. 7), and Reply (Doc. 11), the Court denies the Petition.[1]

## CLAIMS ASSERTED

Petitioner brings two claims in his instant Petition.  First, he contends that his trial lawyer was ineffective in advising him of the strength of the State's case,

---

[1] For ease of review, the state collateral court's order is attached to this Order. *See* Appendix. Citations to the underlying record are found on this docket at Doc. 8-1.

as well as in advising him concerning rejection of a six-year plea offer.  Doc. 1 at 14.  Second, Petitioner contends that the state collateral review court made an unreasonable determination that his trial lawyer was not constitutionally ineffective in introducing evidence of his drug-based probation violation.  *Id.* at 20.

## FACTUAL BACKGROUND

In 2014, Petitioner was charged by information with one count of capital sexual battery and two counts of lewd or lascivious molestation of a victim less than twelve years of age.  Doc. 8-1 at 717.  Prior to the commencement of the jury trial on September 10, 2015, defense counsel advised the court that Petitioner had rejected all of the State's plea offers, including its most recent offer.  *Id.* at 179.  Counsel explained that he had been optimistic about his client potentially receiving a plea offer for probation, but that never came about "because [he] was specifically instructed by [his] client not to make that offer because [his client] would not even accept that."  *Id.* at 177.  To this point, the trial judge engaged in colloquy with Petitioner.

Petitioner was ultimately found guilty as charged of all three counts by the jury.  *Id.* at 719.  He was adjudicated guilty and received a (mandatory) life sentence for the capital sexual battery count and two life sentences for the lewd and lascivious molestation counts, both with minimum mandatory terms of 25 years.  *Id.* at 722.  All three sentences were ordered to run concurrently with each

2

other.  *Id.*

Petitioner appealed to the Florida Fifth District Court of Appeal ("Fifth DCA"), and the Office of the Public Defender filed on Petitioner's behalf a brief and motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Doc. 8-1 at 485–96, 498–99.  The State filed its standard *Anders* notice.  *Id.* at 501–02.  The Fifth DCA *per curiam* affirmed Petitioner's judgments and sentences on November 1, 2016.  *Id.* at 504; *Jones v. State*, 203 So. 3d 173 (Fla. 5th DCA 2016).

In October 2017, Petitioner filed a motion for post-conviction relief through counsel.  Doc. 8-1 at 510–19.  He raised one claim presented now.  In this claim, he stated that trial counsel's strategy in having Petitioner testify about his violation of probation was highly prejudicial and conducted without Petitioner's consent.  *Id.* After an evidentiary hearing was held on May 9, 2019 (*id.* at 544–614), the trial court issued an order on July 3, 2019, denying the motion for post-conviction relief (*id.* at 616–28).

As to the ineffectiveness claim, the collateral court noted that, prior to Petitioner's testimony, the trial court had conducted a colloquy with Petitioner to confirm Petitioner's decision to testify on his own behalf, informing Petitioner that the State would be permitted to impeach him with his prior felony conviction as well as any prior convictions of dishonesty or false statement.  *Id.* at 621.  The court further informed Petitioner that the State could not inquire into the nature of his

prior convictions, so long as Petitioner did not deny he had prior convictions.  *Id.*

Trial counsel then questioned Petitioner regarding Petitioner's agreement with counsel's strategy to inform the jury of the specific nature of his prior convictions. *Id.* at 621–23.  The purpose of this, based on trial counsel's experience, was to avoid the jury assuming the prior conviction was for child abuse.  *Id.* at 622.

The collateral court found the decision to disclose the nature of Petitioner's prior felony conviction to constitute trial strategy and further found that Petitioner had explicitly agreed with that strategy.  *Id.* at 624.  The collateral court also noted that even before trial counsel inquired about Petitioner's prior conviction, Petitioner testified he had previously spent time in jail and had been on probation for a prior conviction.  *Id.* at 623–25.  Petitioner again referred to the fact he had been on probation when trial counsel asked Petitioner about his marriage with the victim's mother.  *Id.* at 625.  Thus, the court found that Petitioner—not trial counsel—initiated the revelations about Petitioner's prior conviction and time spent in jail and on probation. *Id.* at 626.

The court also noted that Petitioner went beyond the scope of the questions posed to him by trial counsel, requiring trial counsel to ask clarifying questions so the jury would not be misled.  *Id.*  The court found that because Petitioner's testimony about his probation could have been considered misleading, the State would have been allowed to inquire on cross-examination about Petitioner's prior

conviction and probation violation.  *Id.* at 627.  Accordingly, the collateral court determined that trial counsel was not deficient in questioning Petitioner about his prior conviction and violation of probation, so as to foreclose the State from being able to cross-examine Petitioner about this testimony.  *Id*.

Petitioner appealed to the Fifth DCA and filed an initial brief through counsel challenging the collateral court's ruling.  He stated the issue presented on appeal as: "Trial Counsel was ineffective in introducing evidence of Mr. Jones' violation of probation for drugs[.]"  *Id.* at 756.  Despite presenting this discrete issue, the appellate brief also included argument about trial counsel's general trial preparation and performance.  Petitioner argued that counsel was ineffective for failing to investigate whether Petitioner was on probation and that trial counsel failed to adequately prepare Petitioner to testify at trial.  *Id.* at 779–83.  The State filed an answer brief contending that the trial court properly denied the claim and objecting to a new argument on appeal.  *Id.* at 786. In his Reply Brief, Petitioner reiterated that the sole ground presented was "Trial Counsel was ineffective in introducing evidence of Mr. Jones' violation of probation for drug use."  *Id.* at 804. On May 5, 2020, the Fifth DCA *per curiam* affirmed the trial court's denial of post-conviction relief.  *Id.* at 815; *Jones v. State*, 294 So. 3d 907 (Fla. 5th DCA 2020).

## LEGAL STANDARDS

This case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889−90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state court rulings is highly deferential and that state court decisions must be given the benefit of the doubt).

## I.      The AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the

relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence.  *See Parker*, 244

F.3d at 835−36; 28 U.S.C. § 2254(e)(1).

## II.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States

Supreme Court established a two-part test for determining whether a convicted

person is entitled to relief on the ground that his counsel rendered ineffective

assistance. A court must ask: (1) whether counsel's performance was deficient and

"fell below an objective standard of reasonableness"; and (2) whether the deficient

performance prejudiced the defense.  *Id*. at 687–88.  While engaging in this

inquiry, a court must adhere to a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.  *Id*. at 689–90.  And

where, as here, the court examines the performance of an experienced trial counsel,

the presumption that his or her conduct was reasonable is even stronger.  *See*

*Fugate v. Head*, 261 F.3d 1206, 1216 (11th Cir. 2001).  "Thus, a court deciding an

actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."  *Strickland*, 466 U.S. at 690; *see also Gates v. Zant*, 863 F.2d 1492, 1497

(11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220−21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v. Brewster*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).

To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v.*

*Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  As explained in *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), a petitioner must alert the state court he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at trial created

the possibility of prejudice, but that the error worked to his or her actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent showing cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012).

Moreover, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized an exception to the general procedural default rule. The Court held that where a claim of ineffective assistance of trial counsel must be raised in an initial

review collateral proceeding under state law, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17.   Thus, to demonstrate "cause" under *Martinez*, a petitioner must establish: (1) a substantial claim of ineffective assistance of trial counsel; (2) the cause for the failure to raise the claim was lack of effective postconviction counsel in the initial collateral review proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim; and (4) the state's law requires ineffective assistance of trial counsel claims to be raised in the initial collateral proceeding.   *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).   A "substantial" claim is one that has "some merit."   *Rigg v. Warden, Blackwater River Corr. Facility*, 685 F. App'x 812, 816 (11th Cir. 2017) (citing *Martinez*, 566 U.S. at 14).

## ANALYSIS

### I.    Ground One is Unexhausted and Meritless

Concerning Ground One, Petitioner states that his Petition alleges:

> that his privately retained postconviction attorney was ineffective in failing to raise a meritorious claim under *Lafler v. Cooper*, [566 U.S. 156] (2012) and *Alcorn v. State*, 121 So. 3d 419 (Fla. 2013), that trial counsel was ineffective in failing to ensure that Mr. Jones was informed of the maximum sentence, and in misadvising him as to the strength of the state's case, prior to his rejection of a six-year plea offer; and that he was prejudiced.

Doc. 11 at 2.  Petitioner admits that Ground One is not exhausted.  *Id.*; Doc. 1 at 19.  However, Petitioner "relies on *Martinez v. Ryan*, 556 U.S. 1, 10 (2021) as authority to consider this claim."  Doc. 1 at 19.

As Petitioner notes, the Sixth Amendment right to effective assistance of counsel extends to plea negotiations.  *Lafler*, 566 U.S. at 162.  Accordingly, *Strickland*'s two-part test applies to claims that counsel was ineffective during plea negotiations. *Id.* (applying *Strickland's* two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Hill v. Lockhart*, 474 U.S. 52, 48 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). Petitioner states that his post-conviction counsel "failed to discover this readily apparent claim," thereby establishing deficient performance and cause to overcome procedural default pursuant to *Martinez*. Doc. 1 at 19.

However, Respondents correctly point out that the trial record shows that collateral counsel was not ineffective in failing to bring this claim, because the claim is meritless. Doc. 7 at 12.  Prior to the commencement of the jury trial on September 10, 2015, trial counsel advised the trial court as follows:

> TRIAL COUNSEL: The defense is ready, Judge, subject to just announcing, because I'm always careful on this point, the, uh - the plea offering was referenced earlier.
>
> Of course, the time for that has expired, but, uh, the State did make an offer late, uh, actually made offers early too, but made a six-year offer

which my client declined.

And I had even - I was optimistic about even possibly - stranger things have happened - of getting an offer of probation. Of course the State never committed on that because I was specifically instructed by my client not to make that offer because he would not even accept that.

I've also explained to him because the - the evidence that we're basically - this is a - this is tantamount to a swearing contest. And that even though there is the traditional absence of . . . a lot of evidence that we usually consider of a forensic nature, that just because the . . . alleged victim is getting on the stand and saying this, if a jury - if that does convince the jury along with other things beyond and to the exclusion of every single reasonable doubt, then that evidence has been held in Florida to be legally sufficient.

So I just wanted those matters clear on the record, Judge. I've left it in his decision, which it is his decision as to whether . . . he would instruct me to negotiate on a plea offer. And I've abided by your desires, right?

PETITIONER: Correct.

TRIAL COUNSEL: Okay. Judge, we're ready for trial.

Doc. 8-1 at 176–78.  Upon prompting from the trial court, the prosecutor then

explained:

PROSECUTOR: And as Mr. Holloman indicated, uh, actually after jury selection last week, we engaged in email communication where I wanted to make it known there hadn't been any formal counteroffers to the written offer that was made, and that . . . I asked . . . for him to have a discussion with Mr. Jones to make it clear that he wasn't interested in making . . . any counteroffers to that.

TRIAL COURT: So, Mr. Jones, the last offer from the State that was on the table was six years of prison followed by five years of probation. And all three of these charges, uh, are punishable by life in prison. So if you . . . are found guilty on any one of the three, you can be sentenced to life in prison. Do you understand that?

PETITIONER: Yes, sir, I understand.

TRIAL COURT: Okay. And you have discussed the plea negotiations or the plea offer made by the State with your attorney?

PETITIONER: Yes.

TRIAL COURT: Okay. And you reject the offer?

PETITIONER: Yes, sir.

TRIAL COURT: Okay.

*Id.* at 178–79.  To make sure, the trial court, in open court just before opening statements, ascertained that the plea offer had not been revoked.  *See* Doc. 11 at 7 n.2.

As reflected during the above pre-trial discussion, trial counsel had discussed with Petitioner the strength of the State's case, yet Petitioner rejected all of the State's plea offers, including the most recent.  As matter of both federal law and the Constitution, this matter was adequately discussed with Petitioner before trial. Petitioner rejected the plea offer.

Nevertheless, Petitioner suggests that a declined plea offer must have almost the same detailed colloquy as a waiver in the taking of a guilty plea.  Doc. 11 at 6−8. This assertion is not grounded in federal law or the Constitution, and Petitioner's citations to "Florida law" (*see* Doc. 1 at 6) are inapt.  Post-conviction counsel was not ineffective in failing to bring this issue on collateral review, as it is meritless.  In short, there is no cause shown for failing to raise this claim initially, and there is no prejudice.  Although Petitioner strongly desires the six-year plea

offer in hindsight, he chose otherwise.  The transcript speaks for itself.

Respondents are further correct on this record that there has been no showing that a fundamental miscarriage of justice will result if Petitioner achieves no success or further consideration on the merits.  *See* Doc. 7 at 15 (citing *McClesky v. Zant*, 499 U.S. 467, 493-494 (1991)).  Given the jury finding, there has been no colorable showing or assertion that Petitioner is factually innocent.  *Id*. Petitioner took the stand in his defense, denying the crimes.  The jury disbelieved him. Petitioner is not entitled to relief on Ground One.

## II.    Ground Two is Exhausted but Meritless

Turning to Ground Two, Petitioner states that trial counsel was "ineffective in introducing evidence of Mr. Jones' drug-based violation of probation," and the state collateral court's determination to the contrary was based on an unreasonable determination of facts and application of law.[2]  Doc. 1. at 20. To assess this claim, the Court again applies the familiar and deferential *Strickland* test pursuant to the AEDPA.

The High Court has explained the difficulty a petitioner faces to meet his or

---

[2] Ground Two of the Petition morphs into something a bit more expansive and indefinite in Petitioner's subsequent briefs.  By his Reply, Petitioner appears to be contending that his trial counsel was ineffective because Petitioner generally was not prepared for his testimony and trial counsel was deficient in investigation and preparation.  But that is not Ground Two.  The proper parameter and limits of Ground Two are as stated above, which is quoted from the instant Petition (Doc. 1 at 20), and are how this ground for relief was couched to both the state trial-level collateral court and the state appellate court (*See* Doc. 8-1 at 756, 804).

her burden under § 2254 as amended by the AEDPA:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer [v. Andrade*, 538 U.S. 63,] 75, 123 S. Ct. 1166[, 155 L. Ed. 2d 144 (2003)].

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99. S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* 562 U.S. 86, 102−03 (2011).

Here, Petitioner must establish that the state courts' rulings on the claim he is presenting in federal court are so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.  *See id.* at 103.  Because the Fifth DCA *per curiam* affirmed the collateral court's denial of Petitioner's present claim, the Court must assess Ground Two by "'look[ing] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *See Wilson v. Sellers*,

138 S. Ct. 1188, 1192 (2018)

In his post-conviction motion, Petitioner alleged trial counsel was ineffective for introducing "highly prejudicial evidence" related to his prior record without Petitioner's consent.  Doc. 8-1 at 509.  Specifically, Petitioner argued at the evidentiary hearing and on appeal that trial counsel was ineffective in that he should not have asked questions relating to Petitioner's violation of probation.  *Id.* at 577−78, 770−79.

The state trial court held a post-conviction hearing on this issue.  It based its finding upon the hearing, the colloquy before trial, and the articulated defense strategy during trial.  *See* Doc. 8-1 at 621–22; Appendix at 6−8.  The court's finding makes sense, particularly when one considers its citations.  They show an experienced lawyer grappling with a difficult case.  During trial, Petitioner was in agreement with his counsel's strategy.  Doc. 8-1 at 622–23; Appendix at 7–8.  As the collateral court found based upon the record, Petitioner's own testimony to the jury went beyond this strategy.  On occasion, Petitioner volunteered information about his prior record to the jury, some of which could be misleading.  *See* Doc. 8-1 at 624–28; Appendix at 9−12.  And in his 30 years of experience, trial counsel knew that a jury in this type of case might conclude that a prior record that remains unexplained was for similar abusive conduct.  *Id*.  Petitioner's trial counsel therefore sought to clarify this potentially misleading testimony.  When one views

this trial record, it is clear the collateral court's view and recitation of the record are not unreasonable.

Moreover, the finding of the post-conviction court that the strategy, itself, was not unsound is supported by this record. The colloquy prior to Petitioner's testimony established that trial counsel strategically inquired into the nature of Petitioner's prior felony conviction so the jury would not infer that the prior conviction involved a child molestation case. The record also shows that Petitioner deviated from the strategy somewhat and gave potentially, if not certainly, misleading, testimony that required trial counsel to engage in anticipatory rehabilitation.

Respondents' points bearing on this issue are well taken:

As reflected by the colloquy, Petitioner agreed with his trial counsel's strategy to go into the nature of the underlying felony so the jury would not infer that Petitioner's prior felony conviction was for child molestation, and advised he understood that he could go into the nature of his prior felony conviction. However, the state courts found that Petitioner "went beyond the scope of the questions posed to him", (T11), and revealed that he had met the child victim's mother after he had gotten out of jail, that he was on house arrest, that he had been on probation, and that he had been violated after his mother-in-law had called the probation office. And, that Petitioner's response to trial counsel's inquiry regarding whether he had ever violated probation was misleading, in that Petitioner testified he had successfully completed both his house arrest and probation, which required counsel to inquire further in order to explain that he had violated his probation.

Petitioner had also explained that this situation caused a problem between him and his mother-in-law, the victim's grandmother, who had testified as a witness for the State. (G62-75,171-72). This portion of the

defendant's direct examination supported the contention that Petitioner wanted to reveal he had violated his probation in order to claim that the victim's grandmother had called his probation officer to get him violated, so the defendant could argue that the grandmother did not like him and had previously caused him trouble. This benefitted Petitioner on two fronts—that his violation of probation was not legitimate and to discredit her testimony at trial which included the child sexual abuse hearsay that was found to be admissible by the trial judge after a hearing at which Petitioner had been present. (G69-74).

In addition, although not mentioned in the state courts, Petitioner not only tried to delegitimatize his violation but he also attempted to minimize the fact that he had violated his probation by calling it a "technical" violation. This was also misleading since characterizing a violation as technical naturally implies a less serious violation, such as failing to submit a monthly report, a change of residence without notifying probation, or failing to pay the costs of supervision . . . However, testing positive for having abused an illegal substance, which was the basis for Petitioner's violation, is a criminal offense in addition to a violation of a term of probation, which made it a substantive violation—not simply a technical violation. . . . Trial counsel was obviously well aware of this fact and ensured he had corrected Petitioner's attempt to minimize or "spin" his violation of probation through further inquiry on direct examination before the State had the opportunity to cross-examine Petitioner about this[.] (T12).

Doc. 7 at 27–29.

In Reply, Petitioner argues that the collateral state court erred because his testimony about lack of preparation by his lawyer is uncontested, given that the trial lawyer did not testify at the hearing due to illness and the state court did not find Petitioner's testimony incredible.  Doc. 11 at 10−14.  But the terms of Ground Two are more limited.  And although this record shows Petitioner had experienced,

retained counsel, the test is not whether the Petitioner had an "A-Plus Lawyer."[3] The test is whether the state collateral court's conclusions were "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003).

When one reads the collateral court's opinion (*see* Appendix), it strikes the reader as sensible and record-based. The opinion is simply not unreasonable or "so lacking in justification that there was error well understood and comprehended in law beyond any possibility for fairminded disagreement." *See Harrington,* 526 U.S. at 102. Accordingly, Petitioner fails to meet his burden under § 2254(d) as amended by the AEDPA. The Court finds an evidentiary hearing on these claims is not indicated. 28 U.S.C. § 2254(e)(1), (2).

## CONCLUSION

Accordingly, the Petition (Doc. 1) is **DENIED**. The Clerk will enter judgment for Respondents and against Petitioner and close this file. The Court denies a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Because Petitioner is not entitled to such a certificate, the Court will not grant *in forma pauperis* status for an appeal.

---

[3] Even if Ground Two were "expanded" and the expansion were exhausted, this trial record shows a capable defense lawyer—one who was very experienced and handling a very difficult case and client. The record does not reveal *Strickland* ineffectiveness.

**DONE AND ORDERED** at Tampa, Florida, on April 12, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies Furnished to:**
Counsel of Record